[Cite as *State v. Rucker*, 2018-Ohio-1832.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105628

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GREG RUCKER

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602705-B

**BEFORE:** E.A. Gallagher, A.J., Boyle, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 10, 2018

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Kelly N. Mason
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant Greg Rucker appeals his convictions from the Cuyahoga County Common Pleas Court for three counts of aggravated robbery and one count of having weapons while under disability. We affirm.

**Factual and Procedural Background**

{¶2} In 2016 Rucker and codefendant Nicholas Kraft were charged with three counts of aggravated robbery, three counts of kidnapping and one count of having weapons while under disability. Kraft plead guilty to two counts of aggravated robbery[1] and agreed to testify against Rucker. The case against Rucker proceeded to a jury trial.

{¶3} Evidence was presented that between 3:30 a.m. and 5:00 a.m. on July 19, 2015, Jack and Victoria Maynard were using their 2012 Dodge Avenger to deliver Plain Dealer newspapers. At the corner of Almira and West Boulevard, the Maynards were approached by two men. The Maynards both testified that one man was white and the other was black. Jack Maynard described the white male as taller with a shaved head and bigger build and the black male as skinnier and wearing a hoodie over his head. Neither Maynard saw the black male's face during the incident. Nicholas Kraft was later identified as the white male.

{¶4} Kraft and the black male demanded that the Maynards give them any money they had, ordered them to turn out their pockets, ordered them to get on the ground and patted them down for money. Kraft pointed a silver gun at Jack Maynard's head during

---

[1]One of the two counts contained a one-year firearm specification.

the incident and at times swung the gun to point it at Victoria. The Maynards testified that Kraft was in charge and the black male followed his directions.

{¶5} After realizing that the Maynards did not have any money, the men appeared to leave and the Maynards got into their car. However, the two men returned, ordered the Maynards out of the car and onto the ground. The men then drove away in the Maynards' car. The Maynards returned home and called 911 to report the robbery. Neither Maynard was able to identify Rucker at trial as being involved.

{¶6} Bruce Page testified that at approximately 6:30 a.m. on that same date, he was riding his bicycle north on West 11th Street approaching Spring Road when he was stopped by two men. A white male, later identified Nicholas Kraft approached him in the street and a black male wearing a neutral or dark gray shirt approached him from the sidewalk. Kraft pulled out a silver gun and ordered Page to empty his pockets. Page gave the men his phone and his wallet that contained between three and five hundred dollars. When Kraft ordered Page to lay on the ground, Page testified "I just got off my bike, and I just threw it down and ran as fast as I could in reverse." Page found a nearby homeowner who assisted him in calling 911. His 911 call was played at trial and, in the call, Page described his assailants as two white males. Page explained at trial that he was "under distress" at the time of the call and that he clearly saw one white male and one black male. He did not have get a good look at the face of the black male and could not identify Rucker at trial as being involved.

{¶7} Nicholas Kraft testified and identified Rucker as his accomplice in the above robberies. Kraft explained that he knew Rucker because, at the time of the offenses, Rucker was dating Megan Mitchell, the sister of Kraft's girlfriend, Novella Mitchell. On July 19, 2015, Novella Mitchell was sick because she was addicted to heroin and did not have the money to buy any more of the drug. After Novella threatened to kill herself, Kraft took Rucker's silver 9 mm handgun and left his house with the intent to make money by robbing people. Rucker accompanied him. Kraft's testimony was consistent with the accounts provided by the Maynards' and Page. Kraft also testified that while he and Greg were driving in the Maynards' car they encountered a motorist pulled over on the side of the road at West 98th Street and Denison Avenue. According to Kraft, Rucker exited the car and returned with a cell phone.

{¶8} Kraft testified that after robbing Bruce Page he and Rucker were confronted by the police. Rucker was able to run away with the gun and Bruce Page's money but Kraft surrendered. Page's cell phone was recovered from Kraft's person.

{¶9} Cleveland Police Officer Trevor Majid testified that he and his partner responded to a reported robbery in the area of Spring Road and West 11th Street on July 19, 2015, just before 7:00 a.m. He and his partner spotted two men matching the provided descriptions walking on Spring Road. When Majid exited his vehicle to confront the suspects, he made eye contact with the black male suspect from a distance of two or three feet away. Majid testified that he gave chase when the suspect fled and got a second look at the suspect's face when he turned into a driveway at 4458 South Hills

Drive. Majid lost contact with the suspect in the backyard of that address and found a damaged portion of fence in the backyard through which he believed the suspect was able to escape into a neighboring yard. At trial he identified Rucker as the suspect he saw and chased on July 19, 2015. He had not made a prior identification of Rucker or noted in a police report that he had seen Rucker's face.

{¶10} Collette McSheffrey testified that she lives at 4458 South Hills Drive and was awakened by two sets of footsteps running in her driveway in the morning hours of July 19, 2015. She saw a police officer examine the fence in her backyard and she found a cell phone in front of her garage door. She provided the phone to the police and went inside her home.

{¶11} That same morning, between 10:00 a.m. and 11:00 a.m. McSheffrey again heard footsteps in her driveway. She saw a light skinned black or perhaps latino man searching the area around the front of her garage and the damaged portion of her fence for approximately two to four minutes. McSheffrey went outside and covertly observed the man get inside a cab with two women. She reported the license plate number of the cab to the police. At trial, she identified Rucker as the man she saw in her yard.

{¶12} Cleveland Police Detective David Shapiro testified that he used the cell phone recovered from McSheffrey's property to locate its owner, Rafael Cardenas. Shapiro learned that Cardenas had been assaulted while walking in the area of West 98th and Denison Avenue and his phone had been stolen.

{¶13} Using the license plate number provided by McSheffrey, police traced the cab to the Ace Taxi Company and were able to link the cab to an address in Maple Heights associated with Rucker and Kraft as well as a specific phone number. The phone number was the recipient of several phone calls placed from the Cuyahoga County jail. The state introduced recorded tapes of four calls and Kraft identified Rucker's voice in each call. In the calls Rucker discussed matters relating to the investigation of the robberies, specifically that the police thought he was Puerto Rican after speaking to Kraft's grandfather.

{¶14} Finally, Megan Mitchell testified on Rucker's behalf and admitted that on the morning of July 19, 2015, she had taken a cab with Rucker and Novella to Spring and West 11th Street near McSheffrey's home. She testified that their purpose was to retrieve a rice cooker from her brother's home for a birthday party that day. However, her brother lived three blocks from the corner of Spring and West 11th. Mitchell claimed that she had the cab drop them off at that location because her brother was paranoid and did not like people knowing where he lives. She testified that they walked three blocks from the cab to her brother's home to get the rice cooker and then walked back to the cab to return home.

{¶15} The jury returned a verdict of guilty on each of the aggravated robbery and kidnapping counts as well as the one- and three-year firearm specifications attached to each count. The trial court found Rucker guilty of the charge of having weapons while under disability.

{¶16} At sentencing, the state stipulated to the merger of the kidnapping counts into the associated aggravated burglary counts, the one-year firearm specifications into the three-year firearm specifications, and the two three-year firearm specifications attached to the robberies of the Maynards into a single three-year firearm specification. The state elected to proceed to sentencing on the aggravated robbery counts. The trial court imposed prison terms of six years for each count of aggravated robbery to be served concurrently to each other but consecutive to the two three-year firearm specifications. The court also imposed a one-year sentence on the count of having weapons while under disability and ordered that count to be served consecutively to the aggravated robbery counts. Rucker's cumulative prison sentence was 13 years.

**Law and Analysis**

**I. The Motion for a Mistrial**

{¶17} In his first assignment of error, Rucker argues that the trial court erred in denying his motion for a mistrial made after Cleveland Police Officer Trevor Majid identified him during trial as the suspect he had chased on July 19, 2015.

{¶18} The decision whether to grant a mistrial rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749; Crim.R. 33. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). The

granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶19} It is undisputed that the state did not disclose, prior to trial, that Officer Majid would make an in-court identification of Rucker. The state indicated at trial that it was not aware that Officer Majid would be able to recognize Rucker from their foot chase.

{¶20} A trial court has broad discretion in regulating discovery and in determining the appropriate sanction for discovery violations. *State v. Smiler*, 8th Dist. Cuyahoga No. 100255, 2014-Ohio-1628, ¶ 13, citing *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991). Upon imposing a sanction, however, the trial court must conduct an inquiry into the surrounding circumstances and impose "the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus.

{¶21} Three factors that govern a trial court's exercise of discretion in imposing a sanction for a discovery violation are: 1) whether the failure to disclose was a willful violation of Crim.R. 16, 2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and 3) whether the accused was prejudiced. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus. We review a trial court's sanction for a discovery violation for an abuse of discretion. *Id*. at ¶ 33. An abuse of discretion implies a decision that is unreasonable, arbitrary, or

unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶22} In this instance, it was disclosed to the defense in discovery that Officer Majid had chased the black male suspect accompanying Nicholas Kraft, on foot, before the suspect escaped in Collette McSheffrey's backyard. It was not disclosed prior to trial that Majid had observed the suspect's face during the foot chase or that he could identify Rucker at trial. The state informed the trial court that it did not know prior to trial if Officer Majid would be able to identify Rucker. Officer Majid testified that he was not asked to identify Rucker in a photo array prior to trial or asked to confirm after Rucker was arrested that Rucker was the black male he had chased on July 19, 2015. The trial court denied Rucker's motion for a new trial but offered to provide a curative instruction to the jury pertaining to Officer Majid's testimony.

{¶23} In applying the three-part *Parson* test in this instance we cannot say that the trial court abused its discretion in denying Rucker's motion for a mistrial. Although Officer Majid's observation of Rucker's face during their foot chase is imputable to the prosecution for purposes of determining a violation of Crim.R. 16, such imputed knowledge is not sufficient to constitute a willful violation of the discovery rules. *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 47, citing *State v. Wiles*, 59 Ohio St.3d 71, 79, 571 N.E.2d 97 (1991). Instead, we must consider the acts of the prosecution itself in making the determination of whether the prosecution "willfully" failed to disclose the statements. *Id.*, citing *Wiles*; *State v. Muszynec*, 8th Dist Cuyahoga

No. 87447, 2006-Ohio-5444.   Here, the trial court found that the prosecution learned of Officer Majid's identification testimony at the same time as the defense.

**{¶24}** Under the second *Parson* factor it is clear that Rucker would have benefitted from learning of Officer Majid's identification prior to trial.   However, under the third factor we find little evidence of prejudice in the record.   Rucker's identity as the black male suspect involved in these robberies was independently established by the testimony of Nicholas Kraft, Collette McSheffrey and even the defense's own witness, Megan Mitchell, who confirmed Rucker's connection to the cab that dropped Mitchell and Rucker off near McSheffrey's home.   Therefore, we find no abuse of discretion in the trial court's decision to deny the motion for a mistrial.

**{¶25}** Rucker's first assignment of error is overruled.

**II. Admission of Jail Phone Calls**

**{¶26}** In his second assignment of error, Rucker argues that the trial court erred in admitting four recordings of jail phone calls where Rucker was called from jail by either Nicholas Kraft or Heather Mitchell, the mother of Megan and Novella Mitchell.   Rucker argues that the state never authenticated the phone calls and that the calls contained inadmissible hearsay.

**{¶27}** The admission of evidence lies within the broad discretion of a trial court and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64,

2001-Ohio-1290, 752 N.E.2d 904. Within this broad discretion is the trial court's duty "to determine whether testimony is relevant and to balance its potential probative value against the danger of unfair prejudice." *State v. Clark*, 8th Dist. Cuyahoga No. 95928, 2011-Ohio-4109, ¶ 32. Evid.R. 402 allows the admission of any relevant evidence so long as the probative value of that evidence is not outweighed by its prejudicial effect, it does not confuse the issue or mislead the jury. Evid.R. 403(A).

{¶28} Evid.R. 901 governs authentication and provides a liberal standard for the authentication of telephone calls. *State v. Teague*, 8th Dist. Cuyahoga No. 90801, 2009-Ohio-129. Pursuant to Evid.R. 901(A), the requirement of authentication for evidence to be admissible "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Telephone conversations are admitted where the identity of the parties is satisfactorily explained." *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979).

> Testimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. There is no fixed identification requirement for all calls. * * * "Each case has its own set of facts." (Citations omitted.)

*State v. Vrona*, 47 Ohio App.3d 145, 149, 547 N.E.2d 1189 (9th Dist.1988).

> Circumstantial evidence, as well as direct, may be used to show authenticity. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be." (Internal citations omitted.)

*Teague* at ¶ 7.

**{¶29}** In the present case, Sergeant Phillip Christopher testified that jail phone calls are made and recorded using a system called Global Telelink ("GTL"). According to Sgt. Christopher, when an inmate makes a call they must input their inmate PIN and these calls are recorded and monitored by the jail's GTL system that allows him to search for calls by an inmate's pin number, name or a destination phone number. He identified state's exhibit No. 31 as a call detail report produced by the GTL system for calls placed from the jail to the same phone number that other witnesses identified as the number used by Rucker to order the taxi on July 19, 2015. Contrary to Rucker's argument on appeal, he did not object to the introduction of the exhibit No. 31 at trial and has failed to present any argument on appeal that its introduction constituted plain error.

**{¶30}** With respect to the four specific recorded phone calls, the calls involved Rucker receiving calls in jail from Nicholas Kraft and Heather Mitchell wherein he made statements indicating his awareness of the present offenses and the police investigation of him as the second suspect. Kraft identified his own voice as well as the voices of Rucker and Mitchell. The testimony of Kraft was sufficient to conclude that it was Rucker's voice captured by the recording. Although Rucker now argues that the phone calls contained inadmissible hearsay, he failed to place such an objection on the record at trial and the statements made by Rucker were admissible as admissions of a party opponent under Evid.R. 801(D)(2).

**{¶31}** The trial court did not abuse its discretion in admitting the recorded conversations.

**{¶32}** Rucker's second assignment of error is overruled.

### III. Sufficiency of the Evidence

**{¶33}** In his third assignment of error, Rucker argues that the state failed to present sufficient evidence to support his convictions.

**{¶34}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**{¶35}** We need not address appellant's guilty finding as to the kidnapping counts because those offenses merged with the above-analyzed aggravated robbery offenses. *See State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18 (explaining that any sufficiency error as to merged counts would be harmless error); *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 (holding that when counts in an

indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless).

{¶36} Rucker argues that the state failed to present sufficient evidence that he aided and abetted Kraft in the commission of the aggravated robberies of Jack and Victoria Maynard and Bruce Page. He further argues that the state failed to present sufficient evidence to support the attached three-year firearm specifications and the charge of having a weapon while under disability.   We find no merit to his arguments.

{¶37} Under Ohio's complicity statute, R.C. 2923.03, "[n]o person acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense; * * * ." R.C. 2923.03(A)(2).   A person who is guilty of complicity in the commission of an offense "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).

{¶38} The complicity statute requires that an accomplice be treated as though he was the person who committed every act of the underlying principal offense. *State v. Kimble*, 7th Dist. Mahoning No. 06 MA 190, 2008-Ohio-1539, ¶ 27. "In other words, the court can impute the elements of the principal offense, committed by the principal, to the aider and abettor." *Id.*, quoting *State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993); *State v. Hurse*, 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 11.

**{¶39}** To support a conviction based upon a defendant's complicity by "aiding and abetting" another in committing an offense under R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. As this court explained in *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459:

> "In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 10 Ohio B. 65, 460 N.E.2d 672 (1983). The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor. *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). * * * A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001 Ohio 1336, 754 N.E.2d 796. Such intent may be inferred from the circumstances surrounding the crime. *Id*. at 246, 754 N.E.2d 796.

*Howard* at ¶ 23, quoting *State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733, ¶ 20-21.

**{¶40}** Aiding and abetting may be shown by direct or circumstantial evidence, and a defendant's participation may be inferred from the defendant's presence, companionship and conduct before and after the offense is committed. *Howard* at ¶ 23, citing *Langford* at ¶ 21, citing *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981). A defendant may aid or abet another in the commission of an offense

by his words, gestures, deeds or actions. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 25.

{¶41} We find that the state presented sufficient evidence that Rucker aided and abetted Kraft in the aggravated robberies in this case. Rucker's identity as Kraft's accomplice was established by the testimony of Kraft, Collette McSheffrey, Officer Majid and Megan Mitchell. Although Kraft's testimony attempted to portray Rucker as merely present at the various offenses, the testimony of the Maynards and Bruce Page established his significant involvement in the facilitation of the robberies.

{¶42} Rucker next argues that the state failed to present sufficient evidence to support the three-year firearm specifications or his conviction for having a weapon while under disability because Kraft held Rucker's gun during the offenses.

{¶43} Rucker's argument is contrary to established law in Ohio. If complicity is proven, a defendant is subject to a sentencing enhancement on a firearm specification regardless of whether he was the principal offender or an unarmed accomplice. *State v. Chapman*, 21 Ohio St.3d 41, 42-43, 487 N.E.2d 566 (1986); *Howard* at ¶ 24 ("It is well settled that an unarmed accomplice can be convicted of an underlying felony, together with a firearm specification, based on an aider and abettor status."), quoting *State v. Porch*, 8th Dist. Cuyahoga No. 65348, 1994 Ohio App. LEXIS 1936, *11 (May 5, 1994). "In such a case, the actions of the principal are imputed to the accomplice, and the accomplice may be found to have committed every element of the offense committed by the principal, including possession of the weapon." *State v. Humphries*, 8th Dist.

Cuyahoga No. 99924, 2014-Ohio-1230, ¶ 18, citing *State v. Frost*, 164 Ohio App.3d 61, 2005-Ohio-5510, 841 N.E.2d 336 (2d Dist.), and *State v. Alexander*, 8th Dist. Cuyahoga No. 98941, 2013-Ohio-2533; *State v. Noor*, 10th Dist. Franklin No. 13AP-165, 2014-Ohio-3397, ¶ 51, fn. 2 ("A firearm specification is not a separate offense but, rather, a sentencing provision that enhances the penalty for the associated predicate offense.").

{¶44} Rucker's argument pertaining to his having a weapon while under disability charge is similarly misplaced. A defendant can be convicted of having a weapon while under disability without holding the firearm if that person was an accomplice who aided and abetted the person who actually possessed and brandished the weapon. *State v. Shepherd*, 8th Dist. Cuyahoga No. 102974, 2016-Ohio-1119, ¶ 17, citing *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478; *State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673. Because Rucker aided and abetted Kraft in the commission of these offenses with a firearm and was under a disability at the time, his conviction was supported by sufficient evidence.

{¶45} Rucker's third assignment of error is overruled.

### IV. Manifest Weight

{¶46} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing

court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

{¶47} "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

{¶48} Based on the facts in the record we cannot say this is the exceptional case that requires reversal under the manifest weight standard.

{¶49} Rucker's fourth assignment of error is overruled.

**V. Ineffective Assistance of Counsel Pertaining to Other Acts Evidence**

{¶50} In his fifth assignment of error, Rucker argues that his trial counsel failed to provide effective assistance of counsel by not objecting to testimony offered by the state that Rucker committed an additional robbery of Rafael Cardenas between the robbery of the Maynards and the robbery of Bruce Page. The testimony of Kraft and Cleveland Police Detective David Shapiro established that Rucker robbed Cardenas of his phone while Kraft and Rucker were driving in the car stolen from the Maynards. The same phone was recovered from outside Collette McSheffrey's garage after Rucker fled through her yard. The record also reflected that Rucker returned to McSheffrey's home later in the morning on July 19, 2015, to search for the phone. Rucker was not charged with an offense related to Cardenas.

{¶51} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶52} Evid.R. 404(B) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The list of acceptable reasons for admitting testimony of prior bad acts into evidence, however, is nonexhaustive. *State v. Mims*, 8th Dist. Cuyahoga No. 100520,

2014-Ohio-5338, ¶ 40, citing *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56.

**{¶53}** In determining whether to permit other-acts evidence to be admitted, trial courts should conduct the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278: (1) determine if the other-acts evidence "is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" under Evid.R. 401; (2) determine if the other-acts evidence "is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other-acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)"; and (3) consider "whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

**{¶54}** The state argues that the evidence related to the robbery of Cardenas was admissible under Evid.R. 404(B) as evidence of Rucker's scheme, plan or course of conduct. However, the true value of the disputed evidence was that it helped to establish Rucker's identity in relation to the charged offenses. By establishing that Rucker was in possession of Cardenas' phone, the state was able to link Rucker to the charged offenses through the testimony of Collette McSheffrey. The testimony of McSheffrey and Detective Shapiro established that the suspect aiding Kraft in the charged offenses dropped Cardenas' cell phone while fleeing through her yard. McSheffrey was able to

identify Rucker as the man who returned to her property later that morning ostensibly to search for the missing phone.

{¶55} We find no violation of Evid.R. 404(B) on this record. Furthermore, even if the record did establish a violation of the rule, Rucker has failed to establish under *Strickland* that there is a reasonable probability that the result of the trial would have been different had the evidence not been admitted.

{¶56} Rucker's fifth assignment of error is overruled.

**VI. The Scope of Redirect Examination**

{¶57} In his sixth assignment of error, Rucker argues that the trial court erred by allowing the state to elicit testimony on redirect that exceeded the scope of cross-examination and lacked relevance.

{¶58} Evidence is relevant where it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, even relevant evidence may not be admitted where "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403.

{¶59} As a general rule, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. *State v. Thomas*, 8th Dist. Cuyahoga No. 101797, 2015-Ohio-3226, ¶ 41, citing *State v. Wilson*, 30 Ohio St.2d 199, 204, 283 N.E.2d 632 (1972). However, the Ohio Supreme Court indicated in *State v.*

*Faulkner*, 56 Ohio St.2d 42, 381 N.E.2d 934 (1978), that redirect examination is not necessarily limited to subject areas brought out on cross-examination. *See also State v. Capko*, 8th Dist. Cuyahoga No. 56814, 1990 Ohio App. LEXIS 1287 (Mar. 29, 1990). "The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." *Wilson* at 204.

{¶60} Rucker's trial counsel questioned Kraft about the location of the gun when Rucker allegedly confronted Rafael Cardenas and returned with Cardenas' phone.   Kraft testified that he believed the gun remained beside him in the car when Rucker exited to confront Cardenas.   On redirect, the state questioned Kraft about prior statements he made concerning the location of the gun at that time and his fear that Rucker could not be trusted with the gun.   The trial court overruled Rucker's objection to this testimony because possession and control of the firearm was raised by the defense during cross-examination.

{¶61} In *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, this court explained:

> Under the "opening the door doctrine," where a party has elicited or introduced prejudicial or inadmissible testimony, his opponent, in the trial court's discretion, may introduce evidence on the same issue in order to rebut any false impression that may have resulted from the earlier admission. A prerequisite of any view regarding "opening the door" is that the initial evidence was somehow prejudicial to the party attempting to present rebuttal evidence.

(Internal citations omitted.) *Id.* at ¶ 122.

**{¶62}** A party may use relevant information to rebut the inference arising from evidence when a party opens the door to otherwise inadmissible evidence. *State v. Battiste*, 8th Dist. Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 33, citing *State v. Jackson*, 57 Ohio St.3d 29, 565 N.E.2d 549 (1991).

**{¶63}** In light of the above authority and under the facts presented, we cannot say the trial court abused its discretion in this instance.

**{¶64}** Rucker's sixth assignment of error is overruled.

**VII. Jury Instructions**

**{¶65}** In his seventh assignment of error, Rucker argues that the trial court erred by denying his request for a jury instruction on the lesser included offense of robbery.

**{¶66}** A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Collins*, 8th Dist. Cuyahoga No. 95415, 2011-Ohio-3241, ¶ 35, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (9th Dist.1988), paragraph two of the syllabus. The court must view the evidence in the light most favorable to the defendant when deciding whether to instruct the jury on a lesser included offense. *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. An instruction is not warranted, however, every time "some evidence" is presented on a lesser included offense. *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (5th Dist.1992).

> To require an instruction * * * every time some evidence, however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense.

*Id.*, quoting *Shane* at 633.

{¶67} A trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense; we will not reverse that determination absent an abuse of discretion. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. Scioto No. 01 CA2781, 2002-Ohio-1462.

{¶68} Here, the evidence presented could not reasonably support both an acquittal on the charges of aggravated robbery and a conviction upon a robbery charge. The victim testimony was uniform that Kraft both had a deadly weapon on his person and displayed and brandished the firearm to facilitate the offenses. Rucker aided and abetted him in these aggravated robberies. There is no evidence in the record to support a jury instruction for robbery because the fact that Kraft brandished a firearm was firmly established.

{¶69} Rucker's seventh assignment of error is overruled.

**VIII. Sentencing Challenges**

{¶70} In his final assignment of error, Rucker presents several different challenges to his sentence. The crux of Rucker's various arguments is that his 13-year cumulative sentence compares unfavorably to Kraft's four-year cumulative sentence in light of the fact that Kraft wielded the gun during their offenses. The record reflects that Kraft

plead guilty to amended charges under counts one and three.   Count one was amended to delete the three-year firearm specification and count three to delete both the one-year and three-year firearm specifications.

{¶71} The four-year sentence imposed upon Kraft was an agreed sentence.

{¶72} Rucker's arguments must be separated into those that deal with individual counts and those that deal with his cumulative sentence as a result of the trial court imposing consecutive sentences. Rucker first argues, in reference to Kraft's sentence, that under R.C. 2929.11(B) his sentence is not consistent with sentences imposed for similar crimes committed by similar offenders.

{¶73} When we consider consistency in sentencing for purposes of R.C. 2929.11(B), we do so on the basis of each individual count. *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197, ¶ 18 (8th Dist.) citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 8.   We reiterated in *Moore* that "consistency is not synonymous with uniformity." *Id.*, citing *State v. Black*, 8th Dist. Cuyahoga No. 100114, 2014-Ohio-2976, ¶ 12; *State v. Micomonaco*, 12th Dist. Butler No. CA2011-07-139, 2012-Ohio-5239, ¶ 49; *State v. Hall*, 10th Dist. Franklin No. 09AP-302, 2009-Ohio-5712, ¶ 10.

{¶74} Here, we cannot say that the trial court violated R.C. 2929.11(B) by imposing a six-year prison term on Rucker's three counts of aggravated robbery.   Kraft's three-year sentence on his two counts of aggravated robbery was part of an agreed

sentence that required him to testify against Rucker. Without Kraft's testimony Rucker's convictions may not have been possible.

{¶75} Rucker next cites *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 123, and *State v. Jones*, 8th Dist. Cuyahoga Nos. 103290 and 103302, 2018-Ohio-498, for the proposition that his sentence is contrary to law because it is not consistent with the principles and purposes of sentencing under R.C. 2929.11 and the factors set forth in R.C. 2929.12.

{¶76} In *State v. Brandenburg*, 146 Ohio St. 3d 221, 2016-Ohio-2970, 54 N.E.3d 1217, the Ohio Supreme Court restated the holding of paragraph 23 in *Marcum* in a simplified fashion:

> In [*Marcum*], we held that R.C. 2953.08(G)(2) allows an appellate court to increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record.

*Id*. at ¶ 1.

{¶77} In this instance Rucker does not argue that his sentence meets the traditional definition of "contrary to law" in the sense that it falls outside the relevant statutory range or the record reflects that the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in 2929.12.

{¶78} Instead, Rucker argues under the second prong above that his sentence is unsupported by the record. We disagree. Rucker's six-year sentences on the aggravated

robbery counts are mid-range sentences for a felony of the first degree. His sentence is supported by the facts in the record and consistent with R.C. 2929.11 and 2929.12.

**{¶79}** Finally, Rucker challenges the trial court's imposition of consecutive sentences. We begin by noting that his arguments comparing his cumulative sentence to Kraft's are largely misplaced. Six years of Rucker's cumulative 13-year sentence stem from consecutive service of two of his three-year firearm specifications as required by R.C. 2929.14(B)(1)(g). His minimum potential sentence, as the trial court warned him prior to trial, was nine years if the trial court imposed the minimum sentence on every count and ordered the underlying counts concurrently. Therefore, a strict comparison between his cumulative sentence and Kraft's is impossible, even if the court ignored the fact that Kraft's sentence was an agreed sentence and he testified against Rucker.

**{¶80}** However, we can consider Rucker's argument that the trial court erred in ordering his one-year sentence for having weapons while under disability to be served consecutively to his six-year sentence on the three concurrent aggravated robbery counts.

**{¶81}** Under R.C. 2953.08, an appellate court may overturn the imposition of consecutive sentences where "upon its review, [it] clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4), or the sentence is otherwise contrary to law." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 10, citing R.C. 2953.08(G)(2)(a)-(b).

**{¶82}** R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶83} A trial court is required to make the findings described above at the sentencing hearing and incorporate its findings into its sentencing journal entry. *State v.*

*Hendricks*, 8th Dist. Cuyahoga No. 101864, 2015-Ohio-2268, ¶ 12, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 1.

**{¶84}** Rucker does not dispute that the trial court made the required findings but instead argues that the findings are not supported by the record.   Rucker argues that the trial court's conclusions that consecutive sentences were necessary to protect the public and not disproportionate to the seriousness of his conduct were not supported by the record.   However, Rucker's argument again focuses on the disparity between his cumulative sentence and Kraft's.   We find no merit to his argument.   Rucker's crimes in the present case were serious offenses involving a weapon, and the presentence investigation report ordered by the trial court reflects that Rucker possesses a significant criminal history including forgery, drug possession, possessing criminal tools and multiple counts of burglary.   We cannot say that the record clearly and convincingly does not support the sentencing court's findings.

**{¶85}** However, we note that the trial court failed to incorporate its consecutive sentencing findings into the sentencing entry. This failure is a "clerical mistake" that may be corrected by the court through a nunc pro tunc entry "to reflect what actually occurred in open court." *Bonnell* at ¶ 30, citing *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 15.

**{¶86}** Therefore, we affirm his convictions but remand this case for the limited purpose of incorporating the consecutive sentence findings made at sentencing into the trial court's sentencing journal entry.

**{¶87}** Judgment affirmed; remanded.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR