THE STATE OF OHIO, APPELLEE, *v.* BROWN, APPELLANT.

(No. 43427—Decided November 12, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Russell Z. Baron,* for appellant.

PRYATEL, P.J. Defendant-appellant, Mack M. Brown, was indicted on two counts of aggravated burglary (R.C. 2911.11) and two counts of grand theft (R.C. 2913.02). A jury found the defendant guilty of all of the above counts, and he was sentenced to seven to twenty-five years each on the two counts of aggravated burglary and one to five years each on the two counts of grand theft, all sentences to run concurrently.

The burglaries in question occurred on May 13, 1980, in an apartment house on Norfolk Road in Cleveland Heights, Ohio. Tenants in two suites in the building testified that their locked apartments had been broken into and ransacked during their absence that day, and that certain items, including pieces of jewelry, were missing.

Appellant was arrested as a result of information received from Greg Widra, a tenant of the apartment building next door. Mr. Widra became suspicious when he saw a man whom he later identified as appellant leaving the building next door to his carrying a bundle wrapped in a sheet. At the time, Widra was located in the garage area between his building and the building next door, writing a note to leave on the windshield of a car blocking his (Widra's) car. The car blocking his turned out to be driven by the man claimed by the state to be appellant. According to Widra, this same man approached him apologizing for having blocked his (Widra's) car. Widra decided to go back to his apartment and call the police to report a suspected burglary, meanwhile watching from his balcony as the man loaded his car with whatever was inside the sheet and drove away. The witness was able to give police both a physical description of the suspect and the license number of the car he was driving.

Later that day Sergeant Horwitz of the East Cleveland Police Department spotted a car matching the description in the police bulletin and arrested appellant, who was the driver. Certain items of stolen jewelry were found in his possession and that of his female companion in the car at the time of the arrest.

In the early morning hours of May 16, 1980, Widra was escorted by police to the East Cleveland jail where he made a positive identification of appellant who was inside a jail cell. Widra also recognized the car, which was parked outside the police station, as the same car which had blocked his path three days earlier.

Appellant defended on the grounds of alibi. Two defense witnesses, employees of a drug treatment center, testified that appellant received medication and counseling from their center on the day in question very close to the time that police records show the suspected crime was reported to police by Widra.

Following his conviction for aggravated burglary and grand theft, appellant perfects this appeal, citing nine assignments of error.

We will treat the first and ninth assignments of error together as dealing with the same topic:

Assignment of Error No. I

"I. The trial court erred in overruling appellant's motion to suppress identification testimony of Gregory Widra."

Assignment of Error No. IX

"IX. The court erred in denying appellant's motion to suppress eyewitness testimony as the identification was made at an impermissively suggestive 'show up,' thereby violating appellant's rights under the Due Process Clause of the United States and Ohio Constitutions."

Appellant urges that the identification procedure was impermissibly sug-

gestive and the testimony itself was lacking in reliability.

As to the issue of whether the police identification procedure was "unnecessarily suggestive," we look first to *Stovall* v. *Denno* (1967), 388 U.S. 293, 302, where it was said:

"The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *."

Following *Stovall*, in which the United States Supreme Court found that bringing a suspect to the victim's hospital bedside for identification was defensible as "the only feasible procedure" under the circumstances, and therefore an admissible identification, we find the United States Supreme Court in *Neil* v. *Biggers* (1972), 409 U.S. 188 and *Manson* v. *Brathwaite* (1977), 432 U.S. 98, declared that even where an identification procedure is unnecessarily suggestive, such as in *Neil* where a single suspect was shown to a witness in the absence of exigent circumstances, the identification testimony may nevertheless still be admissible if it bears sufficient earmarks of reliability "under the totality of the circumstances." In those instances where a tainted procedure was employed, the factors to be examined in assessing the reliability of the testimony "under the totality of the circumstances" are set forth in *Neil* at pages 199-200, as follows:

"As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Finally, we note that Ohio has adopted this same approach. Even when the identification procedure is tainted, the identification testimony is still admissible "so long as the challenged identification itself is reliable." *State* v. *Moody* (1978), 55 Ohio St. 2d 64, at 67 [9 O.O.3d 71], citing *Manson, supra.*

Turning to our case, we find that the procedure employed by police was to convey the witness to the jail area of the East Cleveland police station where he viewed at least two or three other inmates in cells before identifying the appellant inside his cell. The witness Widra was escorted by Sergeant Doran as he walked into the cell area of the jail. The time was about 2:00 a.m., on the second day following the burglaries. Although admittedly very nervous, Widra made a positive identification of appellant after looking into "more than one cell" in the jail area. Sergeant Doran testified that he (Doran) made no comments to Widra during the viewing. Doran's account of how Widra came to identify appellant was as follows:

"Widra, when we went into the main cell block, walked down the center aisle, down and back, and then we came around the corner into a hallway, and there were two or three, I guess, but I recall two cells around the corner. As we went — Widra and myself went to a doorway through which there were the two cells. In the cell on the right Widra viewed this male here, Mack Brown, who later identified himself as Mack Brown, and said, 'I think that's him.'

"At that point I asked Mr. Brown to turn around because he had about a three-quarter profile presented at that point in time. I asked him to turn around and face us, and he did, and at that point Widra said, 'That's him.'"

While it lacked the built-in safeguards of a properly assembled lineup or photographic array, we find that this identification procedure was not so suggestive as a showup (one-to-one confrontation). Furthermore, there is no evidence

that the witness was in any way prompted to pause at the cell occupied by appellant. However, to the extent that the witness may have felt under some psychological pressure to make a positive identification — being aroused by a police call at 1:30 a.m., going to a jail cell area under police escort and (by Sergeant Doran's testimony) appearing very tense and nervous — we will assess the reliability of the identification under "the totality of the circumstances."

The witness testified that he observed appellant from a distance of five or ten feet in broad daylight and that although he spent less than five minutes observing appellant, he looked directly at his face for·"a minute or two." This is confirmed by the physical description Widra gave to police after the incident. Appellant urges that the omission of reference to appellant's moustache during Widra's testimony at the hearing is proof of an unreliable identification; but in fact, Sergeant Doran testified at the hearing that Widra's initial description of the suspect to police included mention of a moustache. The suspect spoke directly to Widra, and Widra testified that when he made the identification of appellant in the jail cell, he also recognized his voice.

Sergeants Doran and Horwitz confirmed the witness' testimony that he made a positive certain identification of appellant two and one-half days after observing the suspect.

We find ample evidence of reliability to uphold the correctness of the trial court's decision to overrule appellant's motion to suppress this testimony. Appellant's first and ninth assignments of error are without merit.

We will next consider together appellant's second, third and fourth assignments of error:

Assignments of Error Nos. II, III and IV

"II. The trial court committed error in overruling appellant's motion for acquittal both at the close of the state's case and again at the conclusion of all of the evidence.

"III. Appellant's conviction is based upon insufficient evidence and thereby violates the Due Process Clause of the 14th Amendment to the United States Constitution.

"IV. The conviction of the appellant is against the manifest weight of the evidence and should be reversed and a new trial ordered."

A motion for acquittal under Crim. R. 29(A) requires the trial court to determine "if the evidence is insufficient to sustain a conviction of * * * [the offenses charged]." The test of the sufficiency of the evidence to support a denial of a Crim. R. 29 motion is interpreted in *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401]:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

Similarly, in determining whether a jury verdict is against the manifest weight of the evidence, this court must determine whether the state has adduced sufficient evidence of all the elements of the crimes charged such that reasonable minds could infer appellant's guilt beyond a reasonable doubt.[1] *State* v. *Jones* (1975), 47 Ohio App. 2d 8, at 19 [1 O.O.3d 156].

Appellant was convicted of aggravated burglary and grand theft. The statutory definition of aggravated burglary is found in R.C. 2911.11:

"(A) No person, by force, stealth, or

---

[1] For the similarity between the tests to be applied in reviewing these two assignments of error, see *State* v. *Jones* (Nov. 28, 1980), Cuyahoga App. No. 42302, unreported, and *State* v. *Goudlock* (Oct. 14, 1976), Cuyahoga App. No. 35172, unreported.

deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."

Three residents of two different suites in the apartment on Norfolk Road testified that on returning home on May 13, 1980, they found that their suites had been broken into and that certain items were missing. They further testified that they had given no one permission to take these items. These witnesses resided in the same building from which Widra saw a man whom he later identified as the appellant exit "carrying a sheet with something in it." A sheet was among the items which one tenant, Frank Salas, stated had been stolen from his apartment. Widra observed the man's car (which was blocking his own car) closely, and reported the incident immediately to the police. Widra also watched from his own apartment balcony while the man "loaded up his car with whatever was in that sheet and drove off." Widra then checked on the apartments next door only to find "that two of the apartments had broken doors."

Later that day, upon being alerted by a police bulletin, Sergeant Horwitz spotted the car with corresponding license number allegedly involved in an aggravated burglary. Appellant was driving the car, accompanied by a female passenger. Appellant and the woman were both wearing chains or jewelry identified as being stolen from the burglarized apartments. Also, other items of missing jewelry, identified at trial, were found in the woman's purse and in the car itself.

Clearly, there is sufficient evidence on all the elements of aggravated burglary whereby reasonable minds could infer beyond a reasonable doubt that appellant by force trespassed in an occupied structure with the purpose of committing a theft offense, where such structure "is the permanent or temporary habitation of any person, in which at the time any person is * * * likely to be present" (R.C. 2911.11[A][3]).[2]

Appellant was also found guilty of theft as defined in R.C. 2913.02:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

The evidence which we have reviewed also supports a jury finding of guilt as to appellant's commission of theft in that

---

[2] With regard to the last-mentioned element, namely the likelihood that someone may be present at the time of the burglary, see *State* v. *Kilby* (1977), 50 Ohio St. 2d 21 [4 O.O.3d 80], pargraph one of the syllabus:

"Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11."

sufficient evidence was presented by the state as proof of each element of the crime charged beyond a reasonable doubt.[3]

Appellant's alibi was presented through a staff nurse and a counselor at the Cleveland Treatment Center. They testified that Center records showed that appellant received medication at the Center near 11:50 a.m. on the day of the crimes, followed by a forty-five minute counseling appointment (which his counselor testified began somewhere between noon and one o'clock). Therefore, appellant argues he could not possibly have been the man whom Widra observed leaving the apartment on Norfolk Road just before 1:23 p.m., when Widra called the police. This alibi defense was offered with testimony that the downtown Center is a seventeen-minute drive from the suburban site of the crimes.

On the strength of this alibi defense, appellant urges that a jury could not find him guilty as charged beyond a reasonable doubt.

We disagree. As the Supreme Court stated in *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, at 231 [39 O.O.2d 366]:

"In either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. By the verdict rendered herein, it is apparent that the jury believed the testimony of the prosecuting witness and the corroborating evidence presented by the state, and an examination of the bill of exceptions demonstates that such evidence was sufficient to support the verdict of guilty, as returned by the jury, and the judgment of the trial court."

The evidence as to times of different occurrences does not render it impossible that appellant could have been driven to Norfolk Road and broken into the apartments prior to 1:23 p.m. when Widra observed the burglar and called police. For example, the Center counselor, Ms. Pratt, although testifying that she and appellant "spent forty-five · minutes in a counseling session together," was very vague as to the starting time of the session other than to say that "he [appellant] arrived at approximately between twelve and one o'clock." If (as appellee suggests) the session began near noon and ended by 12:45 p.m., appellant could have arrived at Norfolk Road about 1:00 p.m., arguably giving him enough time to have committed the crimes in question before Widra spotted him. In any event, the credibility of witnesses — a subject broad enough to include their keenness of memory and powers of observation as well as their veracity—is properly the domain of the jury. The jury in the case *sub judice* chose to credit the state's evidence as sufficiently compelling to prove appellant's guilt beyond a reasonable doubt. We will not disturb that verdict.

Appellant's second, third and fourth assignments of error are overruled.

Assignment of Error No. V

"V. The offenses of aggravated burglary and grand theft are offenses of similar import within the meaning of O.R.C. 3941.25 [*sic*], and, therefore, appellant's theft conviction must be reversed and appellant discharged."

Appellant intends to refer to R.C. 2941.25, the statute on allied offenses of similar import, which reads as follows:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct

---

[3] Appellant was found guilty of theft but convicted of grand theft because of his stipulated prior conviction for a theft offense under R.C. 2913.02(B).

results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In order to determine whether aggravated burglary and grand theft are allied offenses of similar import under our facts, it is first necessary to determine whether the "same conduct" underlies the two offenses with which appellant is charged, and if so, whether the two offenses were motivated by the same animus.[4] As *State v. Donald* (1979), 57 Ohio St. 2d 73, at 75 [11 O.O.3d 242], explains:

"Within the contemplation of R.C. 2941.25(A), allied crimes of similar import necessarily must consist of crimes committed for the same purpose. As the Court of Appeals stated in its decision, R.C. 2941.25(A) '* * * prohibits duplication where both crimes are motivated by a single purpose and where both convictions rely upon identical conduct and the same evidence.' "

Under our facts, neither of these prerequisites for a finding of "allied offenses of similar import" is satisfied. Appellant was indicted for aggravated burglary, which offense consists of trespassing in an occupied structure "with purpose to commit therein [a] theft offense." In that same indictment he was also charged with grand theft under R.C. 2913.02, which in

our case consists of knowingly depriving another of property without his consent, *where the offender already has a prior conviction for a theft offense as set forth in R.C. 2913.02(B)*.[5]

Therefore, the conduct underlying the charge of grand theft includes conduct independent of the burglary in the case at bar as well as conduct inspired by a different animus. Thus, the language of R.C. 2941.25(B) governing offenses of "dissimilar import" controls, and appellant's conviction for both offenses was proper.

Appellant's fifth assignment of error is overruled.

Assignment of Error No. VI

"VI. It was error for the trial court to omit from a requested instruction certain paragraphs which would have given the jury further guidance in weighing the state's witness' eye-witness identification."

Counsel for appellant made a timely request for a jury instruction on eye-witness identification, proposing the so-called *Telfaire* instruction. This is a model instruction promulgated by the District of Columbia Circuit Court of Appeals in *United States* v. *Telfaire* (1972), 469 F. 2d 552,[6] and adopted by some other jurisdictions. The court refused to use the proposed charge *in toto* but did adopt a significant portion of it.

In *State* v. *Guster* (1981), 66 Ohio St. 2d 266 [20 O.O.3d 249], the Supreme

---

[4] Defined as "purpose" or "immediate motive" in *State* v. *Logan* (1979), 60 Ohio St. 2d 126, at 131 [14 O.O.3d 373].

[5] R.C. 2913.02(B):
"Whoever violates this section is guilty of theft. If the value of the property or services stolen is less than one hundred fifty dollars, violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is one hundred fifty dollars or more, or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, *or if the offender has previously*

*been convicted of a theft offense*, then violation of this section is grand theft, a felony of the fourth degree." (Emphasis added.)

We note that the appellant's indictment under R.C. 2913.02 recites his prior conviction as the basis for charging him with this felony offense.

[6] For an overview of the history of the *Telfaire* instruction in the federal and state jurisdictions, see our recent decision, *State* v. *May* (June 18, 1981), Cuyahoga App. No. 43286, unreported.

Court refused to mandate the giving of a special eyewitness identification instruction in all cases, holding instead that this decision must be made on a case-by-case basis "by the exercise of sound discretion." From a more generalized perspective, in *State* v. *Nelson* (1973), 36 Ohio St. 2d 79 [65 O.O.2d 222], paragraph one of the syllabus, the Supreme Court has held:

"In a criminal case, it is not mandatory upon a trial court to give requested instructions to the jury verbatim, but if the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts they must be included, at least in substance, in the court's charge to the jury. (*State* v. *Barron,* 170 Ohio St. 267 [10 O.O.2d 299], and *Cincinnati* v. *Epperson,* 20 Ohio St. 2d 59 [49 O.O.2d 342], followed.)"

We hold that the court's decision to respect the request of appellant's counsel by including a substantial portion of the special instruction requested satisfied appellant's request. Appellant's sixth assignment of error is overruled.

Assignment of Error No. VII

"VII. A defendant who does not take the witness stand in his own behalf becomes an 'unavailable declarant' under Rules 801(D)(1)(b) and 804, and, therefore, prior consistent statements made by him to an arresting officer should not have been excluded by the trial court."

Essentially, appellant objects to the court's exclusion of the testimony of Sergeant Doran as to remarks appellant made to him at the time of his arrest. Appellant's position is that this testimony should have been admitted under the Rules of Evidence, applying Evid. R. 801(D)(1)(b) and 804.

We disagree.

Evid. R. 804(A)(1) states that a declarant is "unavailable" as a witness in

situations in which he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement." In our case, appellant was exercising his constitutional right not to take the stand, which he did without any "ruling of the court" as to "privilege * * * concerning subject matter." Hence, this Rule is inapplicable to our facts.

Evid. R. 801 provides:

"(D) Statements which are not hearsay. A statement is not hearsay if:

"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. * * *"

This rule is also inapplicable to our facts because appellant did not testify at trial. If appellant intends that the police officer should be considered the declarant, this portion of the rule provides that the officer may testify only to his *own* prior consistent statements and not to any self-serving statements which the defendant allegedly made to the officer.[7]

The trial court properly excluded Sergeant Doran's testimony under the Rules of Evidence. Appellant's seventh assignment of error is overruled.

Assignment of Error No. VIII

"VIII. It is prejudicial for a trial court to fail to admonish the jury to disregard prejudicial remarks made by the prosecutor during closing argument when no evidence to support said remarks has been admitted."

Appellant objects to the comment of the prosecutor in closing argument that "appellant gets [his fancy clothes] from ripping off people, that's how he makes a living." Following defense counsel's objection to this remark, the court stated (addressing the prosecutor), "Mr. * * *, argue the facts in this case, please." This

---

[7] A "declarant" is defined as one "who makes a statement" and is *also* a witness at the trial under Evid. R. 801(B) and (D).

remark admonished the prosecutor for making the comment at issue. Further, the court later instructed the jury that closing arguments do not constitute evidence in the case.

Before determining that a closing argument which goes beyond the record contains prejudicial error, we must review the argument in its totality. In so doing, we find that this single remark, earning a prompt rebuke from the court, resulted in no prejudice to appellant's case. *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, at 157-158 [17 O.O.3d 92].

Appellant's eighth assignment of error is overruled.

We affirm.

*Judgment affirmed.*

PATTON and PARRINO, JJ., concur.