[Cite as *State v. Jackson*, 2024-Ohio-1687.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                            No. 113185

    v. :

ELVESTER JACKSON, :

    Defendant-Appellant. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 2, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676246-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Morgan Austin, Assistant Prosecuting Attorney, *for appellee.*

Weston Hurd LLP and Paul Shipp, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Elvester Jackson ("Jackson"), appeals from his conviction following a jury trial. He raises the following assignments of error for review:

    1. The court erred by denying defendant's motion for a mistrial.

2. The court erred when it denied a recording of a telephone call stipulated to by the state.

{¶ 2} After careful review of the record and relevant case law, we affirm Jackson's conviction and sentence.

## I. Procedural and Factual History

{¶ 3} On November 22, 2022, Jackson was named in a single-count indictment, charging him with escape in violation of R.C. 2921.34(A)(1). The indictment stemmed from allegations that Jackson failed to return to a community-based correctional facility ("CBCF") after receiving temporary leave to attend a medical appointment for a limited period of time.

{¶ 4} The matter proceeded to a jury trial on August 23, 2023. On behalf of the state, Isaiah Bell ("Bell") of the Ohio Department of Rehabilitation and Corrections ("ODRC") testified that he served as Jackson's parole officer. According to Bell, Jackson was initially placed in a halfway house following his release from prison on a felony offense. However, Jackson became a "violator at large" before Bell had an opportunity to complete his first meeting with Jackson, which must occur within the first 24 hours of the offender's release. (Tr. 210-211.) Thereafter, Jackson was sanctioned and placed in the Nancy McDonnell CBCF by the Adult Parole Authority ("APA") in July 2022. Bell explained that the CBCF is a transitional facility that is "a step down from prison." The facility provides programming and assists its residents in gaining various skills before returning to the community.

{¶ 5} Bell testified that Jackson signed "conditions of supervision" when he "was placed at the Nancy McDonnell CBCF." (Tr. 212.) Thereafter, Bell met with

Jackson on a weekly basis to ensure that Jackson was on track to leave the facility within 180 days. Bell stated that he "went over the guidelines of the CBCF" and explained to Jackson that if he left the facility without permission "he [could] get in trouble" and be sanctioned. (Tr. 215.)

{¶ 6} Bell's weekly meetings with Jackson were discontinued after Jackson absconded from the facility in October 2022. According to Bell, Jackson was taken to the hospital on October 13, 2022, "due to sugar spikes." (Tr. 217.) After receiving medical care, Jackson left the hospital without permission and did not return to the CBCF. Bell testified that Jackson made no efforts to reach out to the parole office and, to the best of his knowledge, did not attempt to turn himself in. Accordingly, Jackson was declared a "violator at large" and an escape charge was pursued by the parole board.

{¶ 7} At the conclusion of Bell's direct examination, a sidebar was held to address the parties' apparent confusion regarding the circumstances that led to Jackson's placement at the CBCF. In relevant part, Bell's testimony indicated that Jackson was placed in the transitional facility as a sanction for violating APA rules after he was released from prison. This information was inconsistent with the state's suggestion during its opening argument that Jackson was placed in the CBCF at "the end of a prison sentence he was serving * * * to start transitioning him back into the community." (Tr. 197-198.) The information was equally inconsistent with defense counsel's contention during opening statements that Jackson was not serving a

transitionary period of parole and was on postrelease control after successfully completing his prison sentence.

{¶ 8} During the sidebar discussion, defense counsel expressed that he was unaware that Jackson was placed at the CBCF based on a prior APA violation. Defense counsel characterized this information as a "surprise" and suggested that "it kind of tanks the whole theory of our defense at this point." (Tr. 224.) Defense counsel further asserted that the state failed to provide notice of Jackson's APA sanction during the discovery process. Accordingly, defense counsel sought a mistrial, stating:

> With all due respect, your Honor, I mean, if the documents are in possession of the Parole Board, it may not have been in possession of the prosecutor's office, but it's in possession of the State. You know, I would have been entitled to that at the very least to prepare my client for his case and to advise him of how bad it would have looked had the Court not been courteous to let me know I was running head first into a buzz saw.
>
> You know, your Honor, at this point in time, I'd be inclined to ask for at the very least a mistrial. At most a dismissal. The jury's been impaneled. I don't see how I can recover from this surprise that I've stepped into.

(Tr. 226-227.)

{¶ 9} In response, the prosecutor conceded that Bell provided insight into Jackson's placement at the CBCF that was not previously known by the state. The prosecutor maintained, however, that the circumstances causing Jackson to be placed in the transitional facility were not materially relevant to the escape charge. The prosecutor summarized her position as follows:

I don't think his prior sanctions are relevant to whether or not he escaped from the CBCF. I would agree that it is information that I learned today, but I don't know how that makes it more or less likely that Mr. Jackson absconded from the CBCF on the date in question.

(Tr. 225.) Thus, the prosecutor maintained they had no obligation to disclose parole records that were "irrelevant to the case," and the new information was not grounds for a mistrial. (Tr. 227.)

{¶ 10} Upon hearing from the parties, the trial court denied the oral motion for a mistrial. The court explained its judgment as follows:

Again, the threshold issue is not why [Jackson] was on supervision. It's that he was — as I understand it * * * the threshold issue is that he was to be at CBCF, had to go to the hospital, left. * * * [H]e just never came back. That's what I understand that state's case is. As far as I'm concerned, it's not material as to why he was in prison, when he got out, where he was at, at [a halfway house] or not. He was to be — the issue is he was to be at CBCF and left and didn't recontact them.

(Tr. 235.) While the trial court did not expressly find the state violated the rules of discovery, the court indicated that, as "the least restrictive sanction," it would afford defense counsel additional time "to evaluate any other evidence" or "different arguments" before resuming trial. (Tr. 229.)

{¶ 11} When the trial recommenced the following day, the state presented its second witness, Laresha Duckworth ("Duckworth"), a case worker employed by the CBCF. Duckworth verified that Jackson entered the CBCF on July 28, 2022, and was discharged from the facility on October 13, 2022, — "the date that he went AWOL [absent without leave] from the facility." (Tr. 251.)

{¶ 12} On cross-examination, Duckworth testified that residents at the CBCF can earn community access depending on their risk level and the amount of time

they have spent at the facility. She explained that community access at the CBCF is for a four-hour period. Residents are responsible for their own transportation to scheduled appointments, but CBCF may provide transportation upon request. (Tr. 255-256.) In this case, Jackson was provided transportation to the hospital by a staff member at the CBCF. He was, however, responsible for his own transportation back to the facility. Once Jackson had been missing from the CBCF for a period exceeding four hours, the facility initiated its "AWOL Protocol," which involved "reaching out to the contact number that was on the pass, check calling [Jackson's] emergency contact person." (Tr. 256.) Finally, Duckworth testified that if Jackson had just been "running late" after his medical appointment, he would have been welcomed back into the facility. The amount of time that must pass before a resident will be turned away from the facility and considered an escapee is "situational." (Tr. 259.)

{¶ 13} CBCF program manager, Pamela Cardinal ("Cardinal"), testified that when a resident earns community access, he or she must arrange off-site travel with his or her case worker. Cardinal confirmed that Jackson was discharged from the CBCF based on his failure to return to the facility after a medical appointment. Cardinal provided additional information regarding the AWOL protocol and indicated that a resident is only "deemed failed to return" after the AWOL protocol is completed. With respect to October 13, 2022, Cardinal testified that Jackson was transported to the hospital by CBCF staff members "as a courtesy." (Tr. 271.) Jackson was responsible for his own transportation back to the CBCF, although the CBCF "would have made arrangements to pick him up and bring him back to the

facility" had he made such a request. (Tr. 271.) Finally, Cardinal testified that, to the best of her knowledge, Jackson did not make any attempt to return to the facility after he left the hospital without permission on October 13, 2022.

{¶ 14} CBCF operations manager, Damon Griggs II ("Griggs"), testified that he completed a written-violation report designating Jackson's behavior as "AWOL status/escape." The violation report stated, in relevant part:

> On 10/13/2022 at 12 p.m., Mr. Elvester Jackson was transported to Metro Health hospital due to having a blood sugar reading of 575. At 1:08 p.m., the hospital was called and staff was informed that Mr. Jackson was not there. Mr. Jackson's emergency contact, local jails, and local hospitals were called and Mr. Jackson was unable to be located.

(State's exhibit No. 3.)

{¶ 15} In accordance with established procedure, Griggs notified Jackson's parole officer of Jackson's AWOL status once he had been missing for six hours. A second notification was provided once Jackson was missing from the facility for 24 hours.

{¶ 16} At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, arguing the evidence was not sufficient as to each essential element of escape. Defense counsel summarized his position as follows:

> We don't believe that the state has shown that my client knew he was on some sort of supervision and that they failed to put enough evidence forward to have the jury contemplate whether or not he knowingly or purposely failed to return to his detention or that he purposely tried to break away.
>
> The state [has] merely stated that he did not return. We've not been able to hear whether or not my client had the intent to escape.

(Tr. 307.)

{¶ 17} The state responded that it presented sufficient evidence establishing that Jackson was aware of his APA supervision and that the jury could reasonably infer that Jackson committed the escape offense by failing to return to the facility. The trial court denied the motion for acquittal, finding "that reasonable minds could reach different conclusions as to whether or not each of these elements had been proven." (Tr. 308.)

{¶ 18} On behalf of the defense, Dexter Todd ("Todd") testified that he is employed as the lead resident supervisor at the CBCF. Todd testified that he was familiar with Jackson and was aware that Jackson was transported to the hospital on October 13, 2022. Todd confirmed that he was working at the front desk of the facility that day and was responsible for interacting with the residents coming in and out of the facility. When questioned, Todd had no recollection of Jackson attempting to reenter the facility on October 13th or 14th. Todd also could not recall whether Jackson contacted the facility after he was transported to the hospital. Todd conceded that it was possible Jackson called the facility that day, however, he did not have a record of a phone call being placed. On cross-examination, Todd clarified that if a phone call were made to the facility by Jackson, his common practice would have been to document the call in some way.

{¶ 19} At the conclusion of trial, the jury found Jackson guilty of escape, a felony of the second degree. He was sentenced to an indefinite prison term of five to seven and one-half years.

{¶ 20} Jackson now brings this timely appeal.

## II. Law and Analysis

### A. Motion for Mistrial

{¶ 21} In the first assignment of error, Jackson argues the trial court committed reversible error by denying his motion for a mistrial following an alleged discovery violation. Jackson contends that he was materially prejudiced by the prosecution's failure to disclose pertinent parole records prior to trial.

{¶ 22} Trial courts enjoy broad discretion in ruling on motions for mistrial. *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001). Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. *State v. Benson*, 8th Dist. Cuyahoga No. 87655, 2007-Ohio-830, ¶ 136. An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary, or unconscionable." *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected." *State v. Wilson*, 8th Dist. Cuyahoga No. 92148, 2010-Ohio-550, ¶ 13, citing *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). Thus, a trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*,

410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). The essential inquiry on a motion for mistrial therefore is whether the substantial rights of the accused or the prosecution are adversely or materially affected. *Wilson* at ¶ 13, citing *State v. Goerndt*, 8th Dist. Cuyahoga No. 88892, 2007-Ohio-4067, ¶ 21.

{¶ 24} In this case, defense counsel moved for a mistrial based upon the prosecution's failure to disclose evidence, in violation of the rules of discovery. Specifically, Jackson states that the "defense was not provided APA records or information which would have revealed that Mr. Jackson was in CBCF because he had been sanctioned for violating his parole/APA supervision after release from prison." Jackson does not dispute that he had personal knowledge of the circumstances leading to his placement at the CBCF. Nevertheless, he argues on appeal that "[h]e was not provided with the information necessary for a full and fair adjudication of facts" and, therefore, was entitled to a mistrial.

{¶ 25} Crim.R. 16, which governs discovery, requires the prosecuting attorney to provide copies or photographs, or permit counsel for the defendant to copy or photograph, certain items related to the case and are material to the preparation of a defense or are intended for use by the prosecuting attorney as evidence at the trial. Crim.R. 16(B). The purpose of the rule is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). This rule serves to "'prevent surprise and the secreting of evidence

favorable to one party.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987).

{¶ 26} A mistrial is not mandated where a discovery violation occurs. *State v. Muszynec*, 8th Dist. Cuyahoga No. 87447, 2006-Ohio-5444, ¶ 16. Indeed, a trial court has broad discretion in regulating discovery and in determining a sanction for a discovery violation. *State v. Brown*, 2019-Ohio-1235, 134 N.E.3d 783, ¶ 86 (8th Dist.), citing *Darmond* at ¶ 33. When imposing a sanction for a discovery violation, however, "the trial court must conduct an inquiry into the surrounding circumstances and impose 'the least severe sanction that is consistent with the purpose of the rules of discovery.'" *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 20 (8th Dist.), quoting *Papadelis* at paragraph two of the syllabus.

{¶ 27} In determining the appropriate sanction, a trial court must consider whether (1) the prosecution's failure to disclose was willful, (2) the disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice. *State v. Lindsey*, 8th Dist. Cuyahoga No. 106111, 2019-Ohio-782, ¶ 48, citing *State v. Jackson*, 107 Ohio St.3d 53, 79, 2005-Ohio-5981, 836 N.E.2d 1173, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). We review a trial court's sanction for a discovery violation for an abuse of discretion. *Rucker* at ¶ 20.

{¶ 28} After careful review, we cannot say the trial court abused its discretion in denying Johnson's motion for a mistrial. Contrary to Jackson's assertion on

appeal, our review of the record reveals that the trial court conducted a thorough inquiry into the alleged discovery violation. The trial court granted the parties ample time to develop their competing arguments as to whether the undisclosed APA records would have been relevant to Jackson's defense. Ultimately, the trial court concluded that the circumstances causing Jackson to be placed in the CBCF were irrelevant to the elements of the escape charge. As astutely noted by the trial court, the pertinent issue before the trier of fact was whether Jackson purposely failed to return to the facility without permission or justification. Additional evidence demonstrating that Jackson was placed in the CBCF based on a prior AWOL status would have only hampered Jackson's defense while corroborating the state's allegations in this matter.

{¶ 29} Notwithstanding the lack of prejudice, the trial court provided defense counsel additional time to consult with Jackson and "evaluate any other evidence" as "the least restrictive sanction." (Tr. 229.) Under these circumstances, we find "the ends of justice" did not "so require" a mistrial. *Franklin*, 62 Ohio St.3d at 127, 580 N.E.2d 1, citing *Somerville*, 410 U.S. at 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.

{¶ 30} The first assignment of error is overruled.

### B. Exclusion of Jailhouse Phone Call

{¶ 31} In the second assignment of error, Jackson argues the trial court abused its discretion by prohibiting him from introducing relevant portions of a recorded jailhouse phone call.

{¶ 32} In this case, a redacted version of a jailhouse phone call was originally offered by the state during its case-in-chief. The proposed exhibit, marked state's exhibit No. 7, captures a 17-minute-long phone conversation held between Jackson and an unknown individual. During this phone call, the unknown individual stated to Jackson that he "f***ed up" and should have stayed at the hospital and let the CBCF staff come get him, instead of "running." (State's exhibit No. 7, at 7:51-8:05.) Jackson confirmed that he did not return to the facility on time, but claimed that he was only one hour late and that "they" should have "looked into that." (State's exhibit No. 7, at 7:52-7:57.)

{¶ 33} Initially, defense counsel "stipulate[d] to the relevant portions of that call and its authenticity," and the parties stated that they would discuss which portions of the recording were irrelevant and should be redacted. (Tr. 231-232.) At the close of trial, however, the parties disagreed on which portions of the jailhouse call should be redacted or excluded from the exhibit presented to the jury. Jackson sought to include the portion of the phone call wherein Jackson states that he was only one hour late in returning to the CBCF. (Tr. 329.) Defense counsel argued that Jackson's attempt to return to the facility demonstrates that he did not intend to escape. In contrast, the state argued that Jackson's statement was not relevant and, therefore, should be redacted from the exhibit. The state noted that if the court intended to allow Jackson's statement into evidence, it would withdraw the exhibit in its entirety.

{¶ 34} Following a discussion on the record, the state withdrew the jailhouse call as a trial exhibit. Defense counsel, however, argued that it should be permitted to introduce the exhibit in its entirety as a defense exhibit. The state opposed defense counsel's request, arguing that Jackson's statement during the phone call was inadmissible hearsay and did not satisfy the requirements of Evid.R. 801(D)(2). The trial court agreed and prohibited the recorded phone call from being published to the jury.

{¶ 35} On appeal, Jackson contends that the portion of the audio recording he sought to introduce was highly relevant and admissible under Evid.R. 106, 803(8), or 804(B)(3). Jackson argues that his statement "corroborates a defense argument that [he] *did* return to the CBCF on October 13, 2022 but was turned away." (Emphasis sic). While conceding that his admission during the phone call was against his interests, Jackson maintains that the act of "returning late tends to negate the intent elements of the [escape] charge, since he did ultimately return."

{¶ 36} Appellate courts ordinarily review a trial court's hearsay ruling for an abuse of discretion. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-

Ohio-6699, 172 N.E.3d 75, ¶ 19. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *State v. McFarland*, 8th Dist. Cuyahoga No. 111390, 2022-Ohio-4638, ¶ 21, citing *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 37} Evid.R. 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Certain statements are excluded from the definition of hearsay, including statements of a party-opponent where the statement is offered against that party. Evid.R. 801(D)(2)(a). In addition, there are various exceptions to the hearsay rule. One such exception is for public records and reports:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * *matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

Evid.R. 803(8).

{¶ 38} Lastly, a statement that is offered against a party is not excluded by the hearsay rule if the declarant is unavailable as a witness and the statement

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

Evid.R. 804(B)(3). A statement tending to expose the declarant to criminal liability is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

{¶ 39} After careful review of the record and the contents of the disputed exhibit, we are unable to conclude that the trial court abused its discretion by excluding the recorded jailhouse call. Ordinarily, the statement of a defendant during a recorded jailhouse call is admitted as an admission of a party-opponent under Evid.R. 801(D)(2). *See, e.g., State v. Gerde*, 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶ 9. In this case, however, the nonhearsay rule did not apply once the state withdrew its request to admit a redacted portion of the jailhouse phone call and Jackson sought to introduce the recording as a defense exhibit.

{¶ 40} To the extent Jackson suggests the jailhouse phone call constituted a record of a public agency, we begin by noting that the Second District Court of Appeals has previously held that "Evid.R. 803(8) does not apply to recordings of telephone calls by jail inmates[.]" *State v. Moody*, 2d Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 66. Nevertheless, even if this court were to construe the recording as a "record" as contemplated under the exception to hearsay, we find Jackson's statement within the out-of-court recording constituted double hearsay. Thus, in order for Jackson's statement to be admissible, defense counsel was required to establish that the "hearsay within hearsay" statement also fit within a recognized exception. *See State v. Duke*, 8th Dist. Cuyahoga No. 52604, 1988 Ohio

App. LEXIS 3466, 13 (Aug. 25, 1988) ("Hearsay within hearsay is admissible only if an exception is applicable to each of the hearsay components."); Evid. R. 805.

{¶ 41} In this case, Jackson has alternatively suggested that his statement during the recorded phone call was admissible as an exception to hearsay under Evid.R. 804(B)(3). However, Jackson has provided no basis to conclude that he was unavailable as a witness as required under the rule. *See State v. Brown*, 3 Ohio App.3d 131, 138, 443 N.E.2d 1382 (8th Dist.1981) (stating "a declarant is "unavailable" as a witness in situations in which he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement[.]"). Relatedly, Jackson has not identified corroborating information in the record to suggest his out-of-court statement was trustworthy. As discussed further below, each witness at trial testified that they had no recollection of Jackson attempting to re-enter the facility after the time he was designated to return. Jackson's attempt to shift blame to the transitional facility during a casual conversation with a friend is inconsistent with the reports introduced by the state and is in direct conflict with the testimony of each CBCF employee. Accordingly, we find the trial court did not commit an abuse of discretion by excluding the disputed statement from evidence.

{¶ 42} Finally, assuming arguendo that the trial court erred in excluding the recording as a defense exhibit, we find such error to be harmless. Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be

disregarded." During a harmless-error inquiry, the state has the burden of proving that the error did not affect the substantial rights of the defendant. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Furthermore, if there is "a '[d]eviation from a legal rule,'" courts undertake a "'harmless error' inquiry — to determine whether the error 'affect[ed] substantial rights' of the criminal defendant." *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 732-733, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To be viewed as "affecting substantial rights," the error must have been prejudicial, meaning "'[i]t must have affected the outcome of the [trial] court proceedings.'" *Fisher* at ¶ 7, quoting *Olano* at 374.

{¶ 43} In this case, Jackson was convicted of escape in violation of R.C. 2921.34(A)(1). The statute provides:

> No person, knowing the person is under detention * * * or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

{¶ 44} R.C. 2921.01(E), in pertinent part with regards to these facts, defines detention to mean "confinement in any public or private facility for custody of persons charged with or convicted of crime in this state[.]" Pursuant to R.C. 2901.22, a person acts "purposely"

> when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2901.22(A). "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). Purpose or intent can be established by circumstantial evidence. *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995) (Intent can be determined from the surrounding facts and circumstances.); *State v. Lewis*, 8th Dist. Cuyahoga No. 108463, 2020-Ohio-5265, ¶ 26.

{¶ 45} This is not the case where the excluded out-of-court statement can be characterized as being favorable to the defendant. Had the recording been admitted into evidence, the jury would have heard Jackson's acquaintance chastise him from "running" from the facility. Similarly, Jackson's statement that he failed to return to the CBCF on time after being granted temporary leave to exit the facility for a specific purpose and for a limited period constituted an inculpatory admission. Contrary to Jackson's suggestion on appeal, Jackson's admission does not permit the inference that his failure to return to the facility on time was unintentional. The challenged statement was brief. Jackson did not discuss what occurred after he left the medical facility or the circumstances that caused his alleged late arrival. Under these circumstances, we find no basis to conclude that Jackson's admission negated the purposely element of the escape offense.

{¶ 46} Notwithstanding the inculpatory nature of Jackson's admission, we emphasize that Jackson's statement is inconsistent with the testimony of the CBCF staff members and the facility's documented records. In this case, Bell testified that he met with Jackson once he was placed in the CBCF and explained the facility's

guidelines and the potential sanctions for leaving the facility without permission. Duckworth, Cardinal, and Griggs provided corroborating testimony regarding (1) the circumstances of Jackson's medical emergency, (2) each resident's responsibility for their own transportation to and from leave, and (3) the facility's AWOL protocol. Cardinal testified that she had no recollection of Jackson attempting to return to the facility after he left the hospital without permission on October 13, 2022. In addition, Duckwork and Cardinal each testified that the facility would have accepted Jackson back into the building had he returned to the facility within a reasonable period of time. (Tr. 257-259, and 282.) Similarly, the sole witness presented by the defense testified that he had no recollection of Jackson (1) attempting to reenter the facility on October 13th or 14th, or (2) attempting to call the facility after he left the hospital. Todd explained that if a phone call were placed, he would have documented the conversation.

{¶ 47} Based on the foregoing testimony and the documentary evidence establishing that Jackson was not detained until his arrest in March 2023, a trier of fact could have reasonably concluded that Jackson, knowing he was under detention, acted with the specific intention of failing to return to the CBCF, either following temporary leave granted for a specific purpose or limited period. (*See* state's exhibit No. 5, booking photo dated March 2, 2023.) And given the inculpatory nature of Jackson's statement during the recorded jailhouse phone call, we cannot say the trial court's exclusion of exhibit No. 7 affected the outcome of the

trial proceedings. Accordingly, any error associated with the trial court's evidentiary ruling was harmless pursuant to Crim.R. 52(A).

{¶ 48} The second assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR